FIRST NAT. BANK OF WINFIELD v. PERFECTED CURING & STORAGE CO. et al.   (No. 727–4318.)

(Commission of Appeals of Texas, Section A. March 10, 1926.)

1. Partnership ⬾165.

   Members of general partnership are jointly and severally liable for all valid partnership debts.

2. Partnership ⬾375—Partner, to escape liability on partnership renewal note, must prove that holder of note had notice of limitation of his liability under partnership agreement, when debt was created, or that note sued on was not partnership obligation.

   Partner, to escape liability on note of partnership executed to take up indebtedness of company whose liabilities partnership assumed, was required to prove that under partnership agreement he was not to be personally liable beyond his interest in partnership assets, and that holder of note had notice of that limitation when debt was created, or that note sued on was not a partnership obligation binding on his company.

3. Partnership ⬾238.

   New partner is not liable for debts of old partnership, unless he agrees to become liable therefor.

4. Partnership ⬾238—New partner's liability depends on terms of contract by which he binds himself to pay debts of former partnership.

   New partner's liability depends on terms and conditions of contract by which he binds himself to pay debts of former partnership, and not on his legal relations as a partner.

**5. Partnership ⚖➔242(5)—Partner, to escape liability on partnership renewal note, was required to prove that it was without consideration or that its execution was unauthorized.**

Partner, to escape liability on note binding all partners jointly and severally for its payment, and executed to take up indebtedness of company whose liabilities partnership assumed, was required to prove that it was without consideration, or that its execution was unauthorized.

**6. Partnership ⚖➔239(2)—Partner, assenting to execution of note by partnership, was bound irrespective of whether he received any personal benefit from transaction.**

Partner, assenting in any form to note executed by partnership to take up indebtedness of company, whose liabilities partnership assumed, was bound irrespective of whether he received any personal benefit from transaction.

**7. Partnership ⚖➔239(2)—Note of partnership, executed to take up indebtedness of company whose liabilities 'partnership assumed, held valid, even if only one of obligors received benefits.**

Note of partnership, executed to take up indebtedness of company, whose liabilities partnership assumed, was valid, if based on a legal consideration, even if only one of obligors received benefits.

**8. Partnership ⚖➔239(2)—Partner cannot escape liability on valid partnership note, though holder knew partner was to get no personal benefit from transaction.**

Partner cannot escape liability on note of partnership executed to take up indebtedness of company whose liabilities partnership assumed, though holder of note knew that partner was to get no personal benefit from such transaction.

**9. Partnership ⚖➔242(5).**

Evidence *held* to show that officers of partnership were authorized to execute renewal note to take up indebtedness of company whose liabilities partnership assumed.

**10. Novation ⚖➔5.**

Members of partnership, executing note to take up indebtedness of company whose liabilities partnership assumed, *held* bound by novation.

**11. Novation ⚖➔12.**

Evidence *held* to show that partnership, executing note to take up indebtedness of company whose liabilities partnership assumed, contemplated a novation.

Error to Court of Civil Appeals of Sixth Supreme Judicial District.

Action by the First National Bank of Winfield against Charles B. Cohen and others, engaged as partners under the name of the Perfected Curing & Storage Company. Judgment for plaintiff in the district court was reversed and rendered as to the appealing defendant in the Court of Civil Appeals (266 S. W. 864), and plaintiff brings error. Judgment

of Court of Civil Appeals reversed, and that of district court affirmed.

The following is the opinion of Hodges, J., in the Court of Civil Appeals:

[1, 2] While there was an apparent effort to organize the Perfected Curing & Storage Company as a common-law trust, it is conceded that both it and the former joint-stock company, known as the Perfected Curing & Storage System, were general partnerships. That being true, the partners were, by operation of law, jointly and severally liable for all the valid partnership debts. In order to escape that legal personal liability in this instance, it devolved upon Cohen, the appellant, to prove either that under the provisions of the partnership agreement he was not to be held personally liable beyond his interest in the partnership assets, and that the appellee bank had notice of that limitation at the time the debt was created, or that the note sued on was not a partnership obligation binding on his company. While the record shows a stipulation against personal liability in that agreement, there is no evidence to authorize a finding that the bank had any notice of that limitation. But, even if there was evidence enough to support a finding of such notice, it was not sufficient to require such a finding. The judgment of the trial court involves a finding against notice. In the opinion of the majority reversing the judgment as to Cohen it is not contended that there was notice of that special limitation upon Cohen's liability.

The next question then is, Was this obligation binding on the Perfected Curing & Storage Company as a partnership? Or, to state the question in another form, had the Perfected Curing & Storage Company, of which Cohen was a member, agreed to pay that debt? Caudle, who represented the appellee bank in the transaction, testified:

"I met Mr. Cohen several times in Dallas. This note that has been offered in evidence was prepared by me, and I mailed it to the Perfected Curing & Storage Company at Dallas. This note was a renewal note, renewing another note that was due at the time. The old note which this note was a renewal of was given prior to January, 1921. It was by the Perfected Curing & Storage System. * * * When the old note became due I had conversations with all three of these parties about the payment—with Mr. Cohen, Mr. Emerson, and Mr. Waldrop. That was prior to the renewal when I talked to Mr. Cohen in his office in Dallas about the old note, and he told me they were making arrangements to take care of their old indebtedness, and if we would wait a short time we would get our money in full."

Cohen testified in part as follows:

"I went into the organization (the Perfected Curing & Storage Company) with the distinct understanding that there was to be no personal liability against me either for the liabilities of the old organization or for the new company. For all the stock I took in the new company I

paid for it in cash and in full. I don't know whether I took the stock out before this note was executed that is now sued on or not, but I took my stock when the new company was first organized. I never agreed to become personally liable for the debts of the Perfected Curing & Storage System. I never agreed to any more than is stated in the articles of association of the new company. I never at any time authorized Emerson, Waldrop, or Ormesher to act as my agent to create any personal liability with reference to this note or any other obligation."

The articles of association of the Perfected Curing & Storage Company contain the following provision:

"Whereas Chas. B. Cohen, of Dallas, Texas, is desirous of associating himself with the said Emerson, Waldrop, and Ormesher for the formation of a company to take over the entire assets, together with the liabilities of the business of the Perfected Curing & Storage System, and to conduct and operate a similar business to be known as Perfected Curing & Storage Company:

"The first board of trustees shall and does consist of Chas. B. Cohen, A. W. Emerson, D. L. Ormesher, F. E. Waldrop, who shall continue in office for one year from date hereof and until their successors are elected as herein provided."

Those articles were signed on January 20, 1920. At that time the appellee held a note against the Perfected Curing & Storage System given for borrowed money. The note sued on was executed by the proper officials of the new company on the 16th day of June, 1920, and was understood by Cohen and his partners to be a renewal of the indebtedness of the old company which the new company had expressly agreed to assume.

[3-8] The law is well settled that a new partner is not liable for the debts of the old partnership, unless he in some form agrees to become liable. His liability will then depend upon the terms and conditions of the contract by which he binds himself to pay the debts of the former partnership, and not upon his legal relations as a partner. Freeman v. Huttig Sash & Door Co., 153 S. W. 122, 105 Tex. 560, Ann. Cas. 1916E, 446. If this were a suit upon the old note of the Perfected Curing & Storage System, and the personal liability of Cohen rested alone upon the contract embraced in the articles of agreement, in which he limited his liability to his interest in the partnership assets, undoubtedly he would have the right to hold the bank to the terms of that agreement. But that is not the legal situation presented by this record. This suit is upon a note executed by the firm of which Cohen was a member, and upon its face binds all of the partners jointly and severally for its payment. It was a plain and unconditional contract to pay a specified sum of money. That is the contract upon which the bank now relies to hold Cohen liable as a partner. The articles of association constituted a contract between the part-

ners with which the bank had no connection, and of which it had no notice. That note can now be impeached by Cohen only upon the ground that it is without consideration, or that its execution was unauthorized. That the new note did rest upon a valid consideration, the old debt, is not disputed. If Cohen assented to its execution in any form, he is bound, regardless of whether he received any personal benefit from the transaction or not. It is sufficient if the contract to pay the amount of the note is based upon a legal consideration, even if only one of the obligors received the benefits. Nor would it be different if the bank officials knew that Cohen was to get no personal benefit from the contract which his firm had made.

[9] It is equally conclusive that the officers of the company were authorized to execute this renewal note. The articles of association themselves stipulate for the assumption of this debt by the new firm. The testimony of both Caudle and Cohen justifies the inference that Cohen understood that his firm was to be so bound.

The legal effect of these articles, when offered as proof of authority on the part of the officers of the firm to execute the note involved, is entirely different from what it would be when offered as evidence of Cohen's assumption of liability. If the articles had formed the only basis of Cohen's liability to the bank, the latter would have therein constructive notice, at least, of all the conditions attending his assumption of the debt. But such notice would not be implied when the articles are used only to combat the plea interposed by Cohen on the trial.

[10,11] This record contains no proof that the appellee had notice of the limitations of liability upon which Cohen relied. In taking the note of the new firm for the debt of the old we have a case of novation. 30 Cyc. 615, and cases cited. That such a novation was contemplated in this case clearly appears from the testimony of Caudle and Cohen himself. I think the judgment should be affirmed as to all the parties defendant.

J. A. Ward, of Mt. Pleasant, for plaintiff in error.

King, Mahaffey & Wheeler, of Texarkana, for defendant in error.

BISHOP, J. In this case the judgment of the district court in favor of plaintiff in error against defendant in error Charles B. Cohen was reversed and rendered by the Court of Civil Appeals in a majority opinion. Associate Justice Hodges of that court delivered a dissenting opinion, in which he concludes that the judgment should have been affirmed. 266 S. W. 864. A clear statement of the case relating to the assignment here presented is contained in those opinions. Having carefully considered the briefs and the arguments (both written and oral) of the respective par-

ties, we have reached the conclusion that the dissenting opinion correctly applies the law to the facts shown in this record. We adopt this opinion as our report, and recommend that the judgment of the Court of Civil Appeals be reversed, and that of the district court affirmed.

· CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.